IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-189-BO

| | |
|---|---|
| LAYLAH MARSH,<br>             Plaintiff, | )<br>)<br>) |
| v. | )     **O R D E R** |
| THE UNIVERSITY OF NORTH<br>CAROLINA AT WILMINGTON,<br>             Defendant. | )<br>)<br>)<br>)<br>) |

This cause comes before the Court on defendant's motion for judgment on the pleadings and plaintiff's motion for leave to amend the complaint. The appropriate responses and replies have been filed, or the time for doing so has expired. A hearing was held on the matters before the undersigned on July 28, 2022, at Raleigh, North Carolina. In this posture, the matters are ripe for ruling and, for the reasons that follow, the motion for judgment on the pleadings is granted and the motion for leave to amend is denied.

## BACKGROUND

Plaintiff's verified complaint alleges as follows. In August 2015, plaintiff's son was a freshman at defendant the University of North Carolina at Wilmington (UNCW). While helping her son move into his dorm, plaintiff encountered Stan Harts, who was then UNCW's Director of Environmental Health and Safety. Plaintiff alleges that while she was moving through with a line of cars Harts, who was acting as a crossing guard, motioned for plaintiff to pull her vehicle out of the line of cars. Harts approached plaintiff's vehicle, which she was driving, and made a suggestive comment about her necklace and chest. After plaintiff's husband, who was in the backseat, leaned forward to address Harts, Harts waived plaintiff's car on.

Shortly after the start of the semester, Harts offered plaintiff's son a work study position in his office under circumstances plaintiff describes as strange. Plaintiff alleges that Harts went on to use her son's position as a pretext to communicate and meet with plaintiff and subject her to "outright acts of sexual harassment which included, but were not limited to, lewd and lascivious comments about [Harts's] desires for [plaintiff], and physical assaults on [plaintiff's] body." [DE 1] Compl. ¶ 27. Plaintiff alleges that she tolerated Harts's actions because she feared that Harts would use his position to harm her son's experience if she did not. At the end of plaintiff's son's freshman year, in June 2016, plaintiff alleges that Harts sexually assaulted her in his office after calling her under the guise of discussing her son.

In April 2017, plaintiff's attorney sent a letter to Harts and UNCW regarding Harts's sexual misconduct, but she received no response. In June 2017, plaintiff made a formal criminal complaint against Harts. A deputy with the New Hanover County Sheriff's Office relayed plaintiff's complaint to the UNCW Police Department.

In January 2018, plaintiff herself became a student at UNCW. In February 2018, plaintiff encountered Harts on campus while she was walking and he was stopped in his vehicle at a traffic light. Plaintiff alleges that Harts revved his engine at her, parked, and then jogged toward plaintiff. Plaintiff became upset and contacted the UNCW Police. After describing Harts's prior assault, plaintiff alleges it became clear that UNCW Police were not aware of Harts's prior conduct. Plaintiff then contacted UNCW's care center and spoke with an employee who agreed to act as plaintiff's advocate. A meeting was set up between plaintiff and UNCW's then-Dean of Students, Dr. Michael Walker.

In March 2018, plaintiff met with Dean Walker and advised him of Harts's conduct. Dean Walker informed plaintiff that UNCW would investigate the conduct and, with plaintiff's

2

agreement, instituted a no-contact order between Harts and plaintiff. Plaintiff subsequently reported multiple encounters with Harts that she contends violated the no-contact order. These were reported to Dean Walker and UNCW's then-Vice Chancellor Elizabeth Grimes and then-Chancellor Jose Sartarelli. Plaintiff alleges that Vice Chancellor Grimes dismissed plaintiff's reports and that her reports of no-contact order violations were never investigated.

In March 2018, plaintiff met with UNCW investigators to review her complaint. The investigators told plaintiff that their purpose was to verify Dean Walker's report. Plaintiff reviewed Dean Walker's report and found it failed to convey the facts reported by plaintiff during their meeting. Plaintiff later informed Vice Chancellor Grimes that she had additional evidence for the investigators to consider, but was told that if the investigators had needed additional evidence they would have asked for it.

In April 2018, plaintiff informed UNCW Police of continued run-ins with Harts on campus, and later reported the same to the New Hanover County Sheriff's Department. After listening to plaintiff's report, which plaintiff alleges they appeared to dismiss, Sheriff's Deputies escorted plaintiff back to the UNCW Police Department where plaintiff met with Captain Padgett. Plaintiff alleges that Captain Padgett appeared to be stifling laughter and that New Hanover County detectives called plaintiff's report laughable. Captain Padgett informed plaintiff that he was not going to investigate her complaint against Harts.

In July 2018, plaintiff learned the results of the investigation into Harts. Plaintiff learned that her complaints of sexual assault and harassment had not been reported to UNCW's Title IX office and that they had been investigated along with complaints by Harts's subordinates regarding his management style. The investigation concluded that Harts had been negligent in his managerial duties and that he would be allowed to step down from his position of Director of Environmental

Health and Safety; Harts would, however, be permitted on campus and plaintiff was informed that she may see him from time to time. Plaintiff appealed the investigation result to UNCW's Human Resources Department.

During the pendency of her appeal, plaintiff filed another complaint after Harts returned to campus as an adjunct professor. Plaintiff was told by UNCW's then-Vice Chancellor that there was nothing else to discuss, to stop contacting the administration, and to stop talking about what had happened on campus. Plaintiff alleges she was threatened with being barred from campus if she continued to pursue her complaints. In December 2018, plaintiff received a response to her appeal by letter dated October 29, 2018. The findings of the investigation were upheld.

On October 28, 2021, plaintiff instituted this action. She alleges claims for gender discrimination and deliberate indifference in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, and breach of contract. UNCW answered the complaint and filed the instant motion for judgment on the pleadings. Plaintiff responded to the motion for judgment on the pleadings and filed the instant motion for leave to amend her complaint. In her proposed amended complaint, plaintiff no longer alleges a claim for breach of contract and alleges two Title IX claims for deliberate indifference and hostile educational environment.

## DISCUSSION

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) allows for a party to move for entry of judgment after the close of the pleadings stage, but early enough so as not to delay trial. Fed. R. Civ. P. 12(c). Courts apply the Rule 12(b)(6) standard when reviewing a motion under Rule 12(c). *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court

4

should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

Federal Rule of Civil Procedure 15 directs that leave to amend be freely given when justice requires. "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citations omitted). A court should only deny leave to amend a pleading when the amendment would be prejudicial to the opposing party, where there has been bad faith on the part of the moving party, or when the amendment would be futile. *Johnson v. Oroweat Food Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is "futile if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (citation omitted).

In its motion for judgment on the pleadings on opposition to plaintiff's motion to amend, UNCW argues that plaintiff's Title IX claims are time barred. Because the Court agrees, it finds plaintiff's request to amend to be futile.

A statute of limitations defense is properly raised at the pleadings stage where the facts sufficient to apply the time bar appear on the face of the complaint. *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). The statute of limitations for a claim under Title IX is borrowed from the applicable state personal injury limitations period. *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007); *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 597 (M.D.N.C. 2019). In North Carolina, the personal injury limitations period is three years. *McClean*, 376 F. Supp. 3d at 597. Federal law, however, dictates when a Title IX claim accrues. *Rouse v. Duke Univ.*, 869 F. Supp. 2d 674, 683 (M.D.N.C. 2012). "Under federal law a cause of

5

action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995). Finally, "Title IX has no administrative exhaustion requirement and no notice provisions." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 247 (2009).

UNCW argues that plaintiff's Title IX claim alleged in her original complaint accrued in July 2018. The Court agrees. As of July 2018, when UNCW informed plaintiff of the results of its investigation, plaintiff "possessed sufficient facts about the harm done to [her] that reasonable inquiry" would have revealed her claim. *Nasim*, 64 F.3d at 955. Plaintiff's Title IX claim is based upon UNCW's alleged failure to promptly investigate her complaints as well as its handling of her complaints, including UNCW's investigation and its decision to combine plaintiff's complaints with complaints by UNCW personnel regarding Harts's management style. All of these facts were known to plaintiff in July 2018.

Although there appears to be no binding authority on this issue, other courts have considered and rejected Title IX plaintiffs' arguments that the filing of an internal appeal should toll the limitations period. In the Title VII context, the Supreme Court has explained that the "grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made. . . . [and] the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980).

Courts applying the holding in *Ricks* to Title IX claims have held that the limitations period is not tolled pending an internal grievance or appeal. *See, e.g., Moore v. Temple Univ.*, 674 F. App'x 239, 241 (3d Cir. 2017); *Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d

6

479, 490-94 (W.D. Va. 2019). The Court agrees with their analysis and determines in this case that plaintiff's Title IX claim alleged in her original complaint is time barred as it accrued more than three years before plaintiff filed her complaint. Plaintiff does not argue that her breach of contract claim states a claim under Rule 12(b)(6), and she confirmed at oral argument that she does not intend to proceed on that claim. It is therefore properly dismissed.

As discussed above, in addition to opposing UNCW's motion for judgment on the pleadings, plaintiff seeks leave to amend her complaint, specifically to allege a second claim under Title IX for hostile educational environment. First, the Court notes that leave to amend, in particular where all of the facts and circumstances were known to plaintiff at the time of filing the original complaint, is disfavored where it is "for the purpose of circumventing dispositive motions." *Googerdy v. N. Carolina Agr. & Tech. State Univ.*, 386 F. Supp. 2d 618, 623 (M.D.N.C. 2005).

Second, a close reading of plaintiff's proposed amended complaint reveals that her hostile educational environment claim is based almost entirely on the same conduct which supports her deliberate indifference claim. Although plaintiff argues that the denial of her appeal is an act which occurred within the limitations period, for the reasons discussed above, the Court holds that the appeal decision is insufficient to comprise a constituent act within the limitations period. Plaintiff also urges the Court to apply the continuing violation doctrine to her hostile educational environment claim. *See Jennings v. Univ. of N. Carolina at Chapel Hill*, 240 F. Supp. 2d 492, 500 (M.D.N.C. 2002) (discussing application of continuing violation doctrine to hostile educational environment claim). However, she does not identify additional constituent acts which occurred during the limitations period which are sufficient to warrant application of this doctrine. For example, in her proposed amended complaint plaintiff identifies a conversation which took place

7

Case 7:21-cv-00189-BO   Document 33   Filed 08/22/22   Page 7 of 8

during the pendency of the appeal with a UNCW employee but does not identify when this conversation took place. Finally, plaintiff's reliance on Title IX implementing regulations to argue that her claims are timely is misplaced as the regulation on which she relies does not apply to claims which accrued in 2018. *See* 34 C.F.R. § 106.45 (effective date Aug. 14, 2020); *see also* https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf (last visited Aug. 19, 2022) (§ 106.45 not retroactively applied).

In sum, even construing plaintiff's claims as true which, if cognizable, are serious and grievous, the statute of limitations bars plaintiff's Title IX claims. The original complaint is therefore dismissed and the motion to amend is denied.

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion for judgment on the pleadings [DE 14] is GRANTED and plaintiff's motion to amend [DE 22] is DENIED. The clerk is DIRECTED to close the case.

SO ORDERED, this $\underline{22}$ day of August 2022.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE